IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MAJED HASHIM A HASHIM, et al.** | : CIVIL ACTION |
| | : |
| v. | : NO. 20-1213 |
| | : |
| **AIR PRODUCTS AND CHEMICALS, INC.** | : |

**MEMORANDUM**

**SCHMEHL, J.**   /s/ JLS                                                                          OCTOBER 15, 2021

      Plaintiffs, residents of the Kingdom of Saudi Arabia and individual minority shareholders in a limited liability company registered in the Kingdom of Saudi Arabia, United Welding and Supplies Company Ltd. ("AHWAS"), brought this diversity action on their own behalf and on behalf of AHWAS against Defendant Air Products and Chemicals, Inc. ("Air Products" or "APCI"), a Delaware corporation with its principal place of business in Pennsylvania, claiming Air Products and its subsidiary, Air Products Leasing B.V. ("APBV"), a Dutch corporation and not named as a defendant in this action, repeatedly violated a non-compete clause in a Shareholders' Agreement that was entered into by APBV and AHWAS. Presently before the Court is the motion of Air Products to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7) and 23.1. For the reasons that follow, the motion is denied and the case will be placed in suspense.

      In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint

1

must contain *Bell Atl. Corp. v. Twombly* sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting, 550 U.S. 544, 570 (2007)).

According to the Complaint, on September 12, 2011, AHWAS and APBV entered into a Share Purchase Agreement pursuant to which AHWAS and APBV purchased 75% and 25%, respectively, of another limited liability company incorporated in the Kingdom of Saudi Arabia, Abdullah Hashim Industrial Gases & Equipment Co. Ltd. ("AHG"). Compl. at ¶¶ 3, 27, 28. AHG is a "a leading manufacturer and supplier of industrial and medical gases in the Kingdom of Saudi Arabia and the surrounding region." *Id.* at ¶¶ 3, 43. AHG's managing director is Khalid Hashim, who also controls 84% of AHWAS and is AHWAS's general manager *Id*. at ¶¶ 25–26, 60. The remainder of AHWAS is owned by Plaintiffs, all also members of the Hashim family. *Id*. at ¶¶ 15–22. AHWAS, in turn, controls the majority of AHG's board: it has the power to appoint six of AHG's eight managers, while APBV may appoint only two. *Id*. at ¶ 3.

In connection with APBV's acquisition of its 25% stake in AHG, AHWAS and APBV entered into a Shareholders' Agreement on May 29, 2012. ECF1, Ex.1.

Article 21 of the Shareholders' Agreement provides for the application of the laws of Saudi Arabia:

> 21.1 This Agreement and any disputes or claims arising out of or in connection with its subject matter are governed by and construed in accordance with the law of Saudi Arabia.
>
> 21.2 The Partners shall endeavor to settle all matters arising under this Agreement amicably, but all disputes arising in connection with this Agreement not settled amicably within a reasonable period shall be finally resolved by the competent courts of Saudi Arabia.

*Id*. at p. 54.   Article 22 of the Shareholders' Agreement is the Non-Compete, which provides:

> 22.1 As long as a Partner is a Partner in the Company and for three (3) years thereafter, the Partners undertake to cooperate together in the interests of the Company and they agree that none of the Partners will participate directly or indirectly, in any other business in Saudi Arabia that is similar to the industrial and commercial business of the Company as described in the Company's Articles of Association as at the date of this Agreement, an extract of which is attached at Appendix. In particular, subject to Clause 22.2 below, neither Partner shall, and each Partner shall procure that none of its Affiliates will, as long as it is a Partner in the Company and for three (3) years thereafter, engage, directly or indirectly, in any activities that compete or conflict with the business of the Company in Saudi Arabia including, but not limited to, the following, without the prior written consent of the other Partner:
>
> (a) [P]roviding any product or service where a material component of such product or service competes or conflicts with the business of the Company;
>
> (b) [P]articipating (whether as shareholder, partner or otherwise and whether directly or indirectly) in any project, business or activity where a material component of such project, business or activity competes or conflicts with the business of the Company;
>
> (c) [E]ither on its own account or in conjunction with or on behalf of any other person, employing, soliciting or enticing. away or attempting to employ, solicit or entice away from the Company any person who is an officer, manager, consultant or employee of the Company or an employee of any Party seconded to the Company whether or not such person would commit a breach of contract by reason of leaving such employment without the prior written agreement of the Parties; or
>
> (d) [E]ither on its own account or in conjunction with or on behalf of any other person, soliciting or enticing away or attempting- to solicit or entice. away from the Company any person who is a customer, client, prospective customer or client, agent or correspondent of the Company.

>    22.2 The restrictions set forth in Clause 22.1 shall not apply to:
>
>    (a) The business conducted by Air Products Yanbu Limited's branch in Saudi Arabia prior to the date of this Agreement pursuant to foreign investment license No. (820/1) dated 21/10/1424H, in such form, size, and magnitude as currently conducted as at the date of this Agreement;
>
>    (b) Any services contract related to AP's customer plant support division, provided that such contract shall have an aggregate value of not less than 10% of the Company's annual turnover for the immediately preceding year;
>
>    (c) [A]ny large air separation or large hydrogen project undertaken by AP or its Affiliates provided however that such project shall have a value of not less than three times the Company's annual turnover for the immediately preceding year and that AP shall give the Company, AHWAS and/or any of their Affiliates a right of first refusal to participate in the entity undertaking the project in such proportion as may be mutually agreed between the parties;
>
>    (d) [A]ny project that the Company does not qualify for, provided however that, subject to the bid requirement, AP shall give the Company, and/or AHWAS or its affiliates a right of first refusal to participate in the entity undertaking the project.
>
>    22.3   The Company will grant AP the status of preferred supplier for machinery, equipment and products that it needs to purchase from third parties provided that AP offers terms that are competitive and in accordance with the then prevailing market conditions.

*Id*. at pp. 54-55.

According to Plaintiffs, "[t]he significance of the Non-Compete is that it forbids either party from soliciting or entering into any project that is similar to the business of

AHG, in terms that are both broad and categorical, absent the application of a narrow, and specifically defined list of carve-outs from liability." Compl. at ¶ 66.

Prior to entering the Shareholders' Agreement, Air Products executed a Letter of Undertaking, which provides:

> 1. APCI is aware of a Shareholders' Agreement dated 29 May 2012 that you have entered into with Air Products Leasing B.V.
>
> 2. APCI directly or indirectly owns 100% of the outstanding common stock of Air Products Leasing B.V. APCI is not taking or planning on taking any action to reduce its direct or indirect ownership interest in or full control of Air Products Leasing B.V. and APCI shall, at all times, ensure that Air Products Leasing B.V., or any transferee of Air Products Leasing B.V., remains directly or indirectly, a wholly owned subsidiary of APCI and under its full control.
>
> 3. APCI shall procure that Air Products Leasing B.V., conducts its business in such a way as to be able to meet its obligations under the said Shareholders' Agreement and, in particular, comply with the non-compete provisions therein.
>
> 4. This undertaking shall be governed by the laws of the State of Commonwealth of Pennsylvania and disputes thereunder shall be referred to the courts of the State of Commonwealth of Pennsylvania for resolution.

ECF 1, Ex. 2.

Plaintiffs allege that Air Products executed the Letter of Understanding "in order to induce AHWAS to partner with APBV in developing business and relationships with key companies in Saudi Arabia, including Saudi Aramco." Compl. at ¶ 69. According to Plaintiffs, AHWAS required the Non-Compete so that Air Products could not take advantage of the information and relationships it had obtained and circumvent AHWAS in future dealings with AHWAS' customers in Saudi Arabia. *Id.* at ¶ 70. Plaintiffs allege

that as a result of APBV's 25% acquisition of AHG, APBV was able to engage in industrial gases project work with Saudi Aramco for the first time. *Id*. at ¶ 82.

The Complaint alleges that on April 23, 2019, at AHG's Annual General Meeting, APBV stated that they were dissatisfied with its partnership with AHWAS and with AHG's financial performance. *Id*. at ¶ 83. On April 23, 2019, AHWAS' General Manager, Khalid Hashim, informed Plaintiffs that APBV "had communicated an intent to acquire AHWAS' interest, or to sell its own interest in AHG." *Id.* at ¶ 85. Plaintiffs allege that "[u]pon learning of APBV's planned offer to acquire AHWAS' interest or sell its own, they began investigating the activities of APBV and the APBV Managers in Saudi Arabia." *Id*. at 88. Plaintiffs claim that as a result of their investigation, they "discovered for the first time that [APBV] had circumvented AHWAS and AHG, and violated the Non-Compete by soliciting and participating in a project with Saudi Arabia that is 'similar to the industrial and commercial business' of AHG, and therefore fits squarely within the scope of conduct forbidden by the Non-Compete (the 'Aramco Project')." *Id*. at ¶ 89. According to Plaintiffs, APBV did not obtain the written consent of AHG or AHWAS before engaging in the Aramco Project. *Id*. at ¶ 94. Plaintiff's further alleged that despite its obligation under the Letter of Undertaking to procure [APBV's] compliance with the Non-Compete, Air Products did not cause [APBV] to obtain written consent from AHG or AHWAS, as required by the Non-Compete." *Id*. at ¶ 95.

Plaintiffs allege that "[APBV's] entry into the Aramco Project harmed AHG and AHWAS by depriving them of the opportunity to participate in a project with Saudi Aramco, historically their largest customer" and "because the project will result in the

production of excess industrial gases which will directly compete with the business of AHG and AHWAS and decrease AHG and AHWAS's profits." *Id*. at ¶¶ 99-100. Plaintiffs later discovered that APBV had entered into a series of other contracts in violation of the Non-Compete *Id*. at ¶ 101.  Plaintiffs claim that Air Products was in "full control" of APBV (as represented in the Letter of Undertaking) yet failed to prevent APBV from violating the Non-Compete. *Id*. at ¶ 107.

On June 9, 2019, APBV made an offer to buy out AHWAS' interest, or sell its own interest, in AHG and the AJWAA JVs ("Offer to Purchase or Sell"). *Id*. at ¶ 110. Plaintiffs claim that Air Products directed the APBV Managers to make the Offer to Purchase or Sell. *Id*. at ¶113.

Plaintiffs allege that "[u]pon learning of [APBV's] Offer to Purchase, and competing projects, on or about July 8, 2019, Plaintiffs directed the General Manager of AHWAS, Khalid Hashim, to retain counsel to review [APBV's] actions, and, potentially pursue litigation against Defendant." *Id*. at ¶114. Khalid Hashim subsequently retained local counsel who concluded that APBV's actions violated the Non-Compete and recommended pursuing litigation. *Id.* at ¶116.  On July 11, 2019, AHWAS's counsel prepared a draft complaint which he sent to Khalid Hashim and to Plaintiffs. *Id*. at ¶117. On July 24, 2019, Khalid Hashim had a private meeting with the APBV Managers and a second private meeting with the APBV Managers on September 30, 2019. *Id*. at ¶120. Plaintiffs allege that the July 19, 2019 draft complaint was never filed. *Id*. at ¶121. Plaintiffs alleged that since his July 24, 2019 meeting with the APBV Managers, Khalid Hashim has refused to discuss with Plaintiffs the substance of APBV's actions, AHWAS'

abandoned plans to pursue litigation or his communications with APBV and has instead pursued his own interests to the detriment of AHWAS shareholders. *Id.* at ¶¶122-123.

Plaintiffs have asserted derivative claims on behalf of AHWAS against Air Products for breach of contract (Count One), tortious interference with AHWAS' Relationship with Air Products B.V. (Count Two), tortious interference with AHWAS' relationship with Saudi Aramco (Count Three), conversion/ misappropriation under Pennsylvania law (Count Four), a derivative claim and a direct claim for usurpation under Saudi law (Count Five), a direct claim for aiding and abetting APBV Managers' breach of fiduciary duty (Count Six), and a direct claim for aiding and abetting Khalid Hashim's breach of fiduciary duty (Count Seven).

In their breach of contract claim. Plaintiffs allege, *inter alia*, that

> 127. On or around May 29, 2012, through the execution of the Shareholders' Agreement, Air Products B.V. entered into a valid, binding, and enforceable contract, supported by consideration, to comply with the terms of the Non-Compete provision contained therein.
>
> 128. As set forth herein, in violation of its obligation, Air Products B.V. solicited and entered into a series of contracts, including, but not limited to, the Aramco Project, which fit squarely within the scope of conduct barred by the Non-Compete provision without obtaining AHWAS' or AHG's prior written consent to do so.
>
> \*\*\*\*\*\*\*\*\*\*
>
> 130. On or around May 9, 2012, through the execution of the Letter of Undertaking, Defendant entered into a valid, binding, and enforceable contract, supported by consideration, to procure Air Products B.V.'s compliance with the Shareholders' Agreement, and specifically with the Non-Compete provision contained therein.
>
> \*\*\*\*\*\*\*\*\*\*

> 132. In violation of its duties under the Letter of Undertaking, Defendant directed Air Products B.V. to participate in the competing projects, including the Aramco Project, and/or failed to prevent Air Products B.V. from doing so, without obtaining prior written consent.

In their claim for tortious interference with AHWAS' relationship with Air Products, B.V., Plaintiffs allege, *inter alia*, that:

> 135. On or around May 29, 2012, through the execution of the Shareholders' Agreement, Air Products B.V. entered into a valid, binding, and enforceable contract, supported by consideration, to comply with the terms of the Non-Compete provision contained therein.
>
> 136. Defendant is aware of Air Products B.V.'s entry into the Non-Compete, and is in "full control" of Air Products B.V.'s compliance therewith, as represented by the Letter of Undertaking.
>
> 137. Defendant intentionally interfered with the Shareholder's Agreement by directing Air Products B.V. to solicit and participate in the competing projects, including the Aramco Project, without obtaining the prior written consent of AHWAS or AHG, in violation of the Non-Compete.

In their claim for tortious interference with AHWAS' relationship with Saudi Aramco, the Plaintiffs allege, *inter alia*, that:

> 143. Furthermore, by virtue of the Non-Compete provision in the Shareholders' Agreement, AHWAS has a right to participate in any projects that are similar to the business of AHG, including the Aramco Project.
>
> 144. Defendant is aware of AHWAS' contractual right, and is in "full control" of Air Products B.V.'s compliance therewith, as represented by the Letter of Undertaking.
>
> 145. Defendant intentionally interfered with AHWAS' prospective contractual relationship with Saudi Aramco by directing Air Products B.V. to participate in the Aramco Project without prior written consent, in violation of the Non-Compete.

In their claim for conversion, Plaintiff allege, *inter alia*, that:

> 151. Defendant knowingly directed Air Products B.V. to participate in the competing projects, including the Aramco Project, without obtaining prior written consent from AHG or AHWAS.
>
> 152. In so doing, Defendant knowingly deprived AHWAS of its property right in the profits arising from the competing projects, including the Aramco Project.

Finally, in their claim for usurpation under Saudi law, Plaintiffs allege, *inter alia*, that:

> 157. By entering into competing projects, including the Aramco Project, without obtaining the written consent of AHWAS, Air Products B.V. deprived AHWAS, and by extension, Plaintiffs, of their right of property in the profits resulting from the competing projects.
>
> 158. Defendant, being in "full control" of Air Products B.V. (as represented in the Letter of Undertaking) directed Air Products B.V. to deprive the Plaintiffs of their proportional share of the profits resulting from the competing projects, and/or failed to prevent Air Products B.V. from doing so.
>
> 159. Defendant, as 100% owner of Air Products B.V.'s common stock (as represented in the Letter of Undertaking) has deprived AHWAS, and by extension, Plaintiffs, of their right of property in the profits resulting from the competing projects.
>
> 160. Under the laws of Saudi Arabia, AHWAS is entitled to the return of its wrongfully converted property in the form of its proportional share of the profits resulting from any and all competing projects. Plaintiffs have standing to assert this claim on behalf of AHWAS.
>
> 161. Likewise, under the laws of Saudi Arabia, Plaintiffs are entitled to the return of their wrongfully converted property in the form of their proportional share of the profits resulting from any and all competing projects. Plaintiffs have standing to assert this claim in their own right.

In its motion to dismiss, Air Products claims the entire action is barred by the internal affairs doctrine, Plaintiffs' derivative claims are barred by Saudi law and the failure of Plaintiffs to join AHWAS as a party, Plaintiffs fail to state a claim for breach of the Letter of Understanding, Plaintiff's derivative tort claims fail as a matter of law and Plaintiffs direct claims fail as a matter of law.

However, it is the Court's view that based on the general allegations of the Complaint and the specific allegations in each Count and a review of the Shareholders' Agreement and Letter of Understanding, a condition must have occurred before Plaintiffs can bring their derivative and direct claims in this Court against Air Products for its actions in allegedly failing to procure APBV from breaching the Non-Compete in the Shareholders' Agreement and/or directing APBV to take actions that breached the Non-Compete. That condition is that APBV did in fact breach the Non-Compete provision in the Shareholder Agreement. After all, Air Products is not a party to the Shareholder Agreement.

The Shareholder Agreement clearly reflects that it was the intention of AHWAS and APBV to have any violation of the Shareholders' Agreement by either Partner or by an Affiliate of either such as Air Products, including the Non-Compete, resolved under Saudi Arabian law and by the Courts of Saudi Arabia. Therefore, pursuant to Article 21 of the Shareholders' Agreement, the question of whether APBV (or Air Products as an affiliate of APBV) breached the Shareholders' Agreement, including, the Non-Compete clause, must be resolved by the competent Courts of Saudi Arabia, applying Saudi Arabian law, rather than through the "backdoor" by the Courts of Pennsylvania and the

United States  If the Courts of Saudi Arabia were to find that APBV did not breach the Non-Compete clause of the Shareholders' Agreement, presumably no action would lie by Plaintiffs against Air Products in this Court for breach of the Letter of Undertaking. However, were the courts of Saudi Arabia to find that APBV did breach the Non-Compete clause of the Shareholders' Agreement in some manner, Plaintiffs could then, pursuant to the terms of the Letter of Understanding,[1] conceivably pursue this action against Air Products in this court applying Pennsylvania law for allegedly breaching the Letter of Undertaking in not procuring that APBV complied with the Non-Compete provisions in the Shareholders' Agreement. At the present time, this current suit against Air Products is premature.

While Plaintiffs may argue that only Khalid Hashim, as General Manager and owner of 84% of AHWAS, a limited liability company, has the authority to bring a derivative suit against APBV in Saudi courts for violation of the Non-Compete of the Shareholders' Agreement, and Khalid has apparently refused to do so after meeting with the APBV Managers on two occasions, their own expert, Dr. Haider Ala Hamoudi, has declared that:

1. "One of the most important aspects of Islamic governance, whether corporate or otherwise, is the principle that the believers, as a whole, have a responsibility to hold each other to account in ensuring proper Islamic ethical behavior." Hamoudi Decl. ¶ 126.

---

[1] Of course, the Court would first have to find that the Letter of Undertaking is a valid contract.

2. "It is 'the right of every Muslim, irrespective of the presence or absence of an officially appointed muhtasib, to come forth as a 'private prosecutor' or enforcer of Islamic standards of governance.'" Hamoudi Decl. ¶ 132.

3. "If a minority shareholder in a company is witnessing directors and others engaged together in the perpetration of a wrong that is harming the company, the minority shareholder not only may, but must, have standing to institute a derivative suit, to correct that wrong on behalf of the company." Hamoudi Decl. ¶ 136.

4. Based on these principles, Saudi courts are "very positively inclined" to permit minority shareholders to institute such suits "on behalf of the Company to the extent that the Company itself refused to, under circumstances where the Company is controlled by those very agents who are causing the alleged harm." Hamoudi Decl. ¶ 140. To do otherwise "runs so deeply against the thrust of Islamic law that a Saudi court would be sure to resist it." *Id*.

5. "I conclude that a court applying Saudi law would engage in an intense fact finding exercise to determine the extent to which, as an equitable matter, using the principles of Islamic law above elucidated, minority shareholders making a derivative claim should be able to proceed with their claim. Among the factors the Court would consider would be the extent of the wrongdoing, the extent to which the minority shareholders are in a position to correct the wrong, and the extent to which the management of the Company is sufficiently implicated in the wrongdoing to render their making a claim on the Company's behalf impractical or unlikely." *Id. at 142.*

6. "I further conclude that Plaintiffs have alleged sufficient wrongdoing on the part of Khaled Hashim as managing director of AHWAS, working in concert with Defendant, as to be able to initiate a derivative suit to correct the wrongdoing." *Id*. at 143.

ECF 32-1.[2]

As a result, the Court finds that pursuant to Article 21 of the Shareholders' Agreement, Plaintiffs must at least attempt to bring their own and any derivative claims on behalf of AHWAS for violation of the Non-Compete in the Shareholders' Agreement against APBV in the Courts of Saudi Arabia before proceeding with any action against Air Products in the Courts of Pennsylvania. The Court will request periodic updates from the parties as to the status of the proceedings in Saudi Arabia.

---

[2] The Court is aware Air Products has provided Saudi law to the contrary.